*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DENNIS O'CONNOR and ANDREW NAGY and
All Others Similarly Situated,

        Plaintiffs,

and

JULIE E. TERHUNE,

        Plaintiff-Appellant,

v

STATE OF MICHIGAN, DEPARTMENT OF
TREASURY, and STATE TREASURER,

        Defendants-Appellees.

FOR PUBLICATION
March 2, 2023
9:00 a.m.

No. 360002
Court of Claims
LC No. 21-000192-MZ

Before: JANSEN, P.J., and REDFORD and YATES, JJ.

REDFORD, J.

Plaintiff Julie Terhune[1] appeals as of right the Court of Claims December 2, 2021 order granting defendants summary disposition under MCR 2.116(C)(4) (lack of subject-matter jurisdiction). Because we agree with the trial court that the Uniform Unclaimed Property Act (UUPA), MCL 567.221 *et seq*., required plaintiff to first utilize the administrative process set forth in that statutory construct before seeking judicial relief for her previously unclaimed property, we affirm.

## I. FACTUAL BACKGROUND

Plaintiff brought a claim and delivery action against defendants to recover an alleged asset valued between $100 and $250 that she asserts Synchrony Bank turned over to the state. Among other claims, plaintiff alleged that she had the right to recover interest earned on her asset while

---

[1] Plaintiffs Dennis O'Connor and Andrew Nagy are not parties to this appeal.

held by the state. The parties do not dispute that plaintiff did not file with the administrator a claim under the UUPA for return of the alleged asset. Defendants moved for summary disposition on the ground that the Court of Claims lacked subject-matter jurisdiction because plaintiff failed to exhaust her administrative remedies provided under the UUPA with the state treasurer. The Court of Claims concluded that plaintiff's claims were not ripe because she eschewed the statutory process for seeking return of the property which left uncertain whether the state owed her any principal or interest. The Court of Claims also held that it lacked jurisdiction and dismissed the case in its entirety.

## II. STANDARD OF REVIEW

We review de novo a trial court's ruling on a motion for summary disposition. *Braun v Ann Arbor Charter Twp*, 262 Mich App 154, 157; 683 NW2d 755 (2004). "Whether the trial court had subject-matter jurisdiction is a question of law that this Court reviews de novo." *Council of Orgs and Others for Educ About Parochiaid v State*, 321 Mich App 456, 463; 909 NW2d 449 (2017) (quotation marks and citation omitted). "We review de novo questions of statutory interpretation, with the fundamental goal of giving effect to the intent of the Legislature." *Id.* at 464 (quotation marks and citation omitted). "That intent is clear if the statutory language is unambiguous, and the statute must then be enforced as written." *Id.* (quotation marks and citation omitted). "We also review de novo questions regarding the proper interpretation of our 1963 Constitution." *O'Connell v Dir of Elections*, 316 Mich App 91, 97; 891 NW2d 240 (2016).

"A summary disposition motion pursuant to MCR 2.116(C)(4) tests the trial court's subject-matter jurisdiction." *Braun*, 262 Mich App at 157. "Summary disposition for lack of jurisdiction under MCR 2.116(C)(4) is proper when a plaintiff has failed to exhaust its administrative remedies." *Citizens for Common Sense in Gov't v Attorney General*, 243 Mich App 43, 50; 620 NW2d 546 (2000). "The burden of establishing jurisdiction is on the plaintiff." *Id.*

## III. ANALYSIS

When interpreting a statute, the primary goal is to discern and give effect to the intent of the Legislature. *Koontz v Ameritech Servs, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002). This Court considers statutory provisions within the context of the whole statute and must "give effect to every word, phrase, and clause . . . [to] avoid an interpretation that would render any part of the statute surplusage or nugatory." *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002). When statutory terms are undefined, this Court interprets the terms according to their plain and ordinary meaning, considering the context in which the words are used, and may consult dictionary definitions if necessary to accomplish this task. *Koontz*, 466 Mich at 312; *Yudashkin v Linzmeyer*, 247 Mich App 642, 649-650; 637 NW2d 257 (2001). Further, if there is "tension, or even conflict, between sections of a statute, this Court has a duty to, if reasonably possible, construe them both so as to give meaning to each; that is, to harmonize them." *O'Connell*, 316 Mich App at 98 (quotation marks and citation omitted).

The Michigan Constitution, Const 1963, art 10, § 4, provides: "Procedures relating to escheats and to the custody and disposition of escheated property *shall be prescribed by law*." (emphasis added). Our Supreme Court has interpreted the term "prescribed by law" as requiring the Legislature to enact statutory provisions to effectuate the "custody and disposition of escheated

property." See *House Speaker v Governor*, 443 Mich 560, 591; 506 NW2d 190 (1993) (citing Const 1963, art 10, § 4 as one example "in which the drafters believed that legislative implementation was necessary to carry out constitutional provisions"). The UUPA is the Legislature's enabling statute to effectuate custody and disposition of unclaimed property.

The UUPA applies to both tangible and intangible property and "provides a mechanism by which the state may hold certain unclaimed property in trust for the benefit of the rightful owner." *Flint Cold Storage v Dep't of Treasury*, 285 Mich App 483, 492; 776 NW2d 387 (2009). Under MCL 567.223(1), "all property, including any income or increment derived from the property, less any lawful charges, that is held, issued, or owing in the ordinary course of a holder's business and remains unclaimed by the owner for more than 3 years after it becomes payable or distributable is presumed abandoned." "Once property is presumed abandoned under one of these provisions, it 'is subject to the custody of this state as unclaimed property' if one or more of the several conditions listed in MCL 567.224 has been met." *Flint Cold Storage*, 285 Mich App at 493, quoting MCL 567.224. The UUPA then requires the state to deposit the money in the state's general fund, or to sell property other than money and then deposit the proceeds in the general fund. MCL 567.243; MCL 567.244(1). However, these monies do not simply escheat to the state. Rather, they remain collectible by the listed owner or one who is deemed to have the right to the property in the owner's place. The state treasurer, who is the "administrator" within the meaning of the UUPA, see MCL 567.222(a), must keep in a separate trust fund "an amount not less than $100,000.00 from which prompt payment of claims allowed under this act shall be made." MCL 567.244(1). Further, the state treasurer

> shall record the name and last known address of each person appearing . . . to be entitled to the property and the name and last known address of each insured person or annuitant and beneficiary and with respect to each policy or contract listed in the report of an insurance company, the number of the policy or contract, the name of the insurance company, and the amount due. [MCL 567.244(1).]

The UUPA establishes an administrative process for recovery of this property, together with interest in some cases. MCL 567.245(1) provides: "A person . . . claiming an interest in any property paid or delivered to the [state treasurer] under this act, may file with the [state treasurer] a claim on a form prescribed by the [state treasurer] and verified by the claimant." The state treasurer then has 90 days to consider the claim and provide written notice to the claimant if the claim is denied in whole or in part. MCL 567.245(2). If the claim is allowed, the treasurer

> shall pay over or deliver to the claimant the property or the amount the administrator actually received or the net proceeds if it has been sold by the administrator, plus any additional amount required by [MCL 567.242[2]]. If the property claimed was interest bearing to the owner on the date of surrender by the holder, and if the date of surrender is on or after March 28, 1996, the administrator

---

[2] The "additional amount required by [MCL 567.242]" applies when property other than money is at issue, and entitles the owner of such property to receive "any dividends, interest, or other increments realized or accruing on the property at or before liquidation or conversion of the property into money." MCL 567.242.

also shall pay interest at a rate of 6% a year or any lesser rate the property earned while in the possession of the holder. Interest begins to accrue when the interest bearing property is delivered to the administrator and ceases on the earlier of the expiration of 10 years after delivery or the date on which payment is made to the owner. No interest on interest bearing property is payable for any period before March 28, 1996. [MCL 567.245(3).]

Thus, if the property was interest-bearing at the date of surrender, then interest is owed on the property. If not, no interest is owed under the UUPA.

MCL 567.247 prescribes a procedure for a claimant who is aggrieved by a decision of the state treasurer, or whose claim has not been acted upon within 90 days of filing. The statute provides:

A person who is aggrieved by a decision of the administrator or whose claim has not been acted upon within 90 days after its filing *may bring an action to establish the claim in the circuit court*, naming the administrator as a defendant. The action shall be brought within 90 days after the decision of the administrator or within 180 days after the filing of the claim if the administrator has failed to act on it. If the aggrieved person establishes the claim in an action against the administrator, the court shall award the claimant costs and reasonable attorney's fees. [Emphasis added.]

Plaintiff disputes that the UUPA is the exclusive method for asserting an interest in such property because MCL 567.245(1) uses the word "may." Plaintiff contends that word choice establishes that the Legislature did not intend for the UUPA's comprehensive procedure be the exclusive method by which a claimant can recover abandoned property. The Court of Claims disagreed and held that it lacked jurisdiction over plaintiff's claim for recovery of abandoned property from the state treasurer because she eschewed the available administrative remedy.

"The Court of Claims is created by statute and the scope of its subject-matter jurisdiction is explicit." *O'Connell*, 316 Mich App at 101 (quotation marks and citation omitted). In particular, except as provided in MCL 600.6421, which involves the right to a trial by jury, and MCL 600.6440, which involves federal causes of action, neither of which are relevant to this case, "the jurisdiction of the court of claims, as conferred upon it by [the Court of Claims Act], is exclusive." MCL 600.6419(1). The Court of Claims' "exclusive" jurisdiction includes the power

[t]o hear and determine any claim or demand, statutory or constitutional, liquidated or unliquidated, ex contractu or ex delicto, or any demand for monetary, equitable, or declaratory relief or any demand for an extraordinary writ against the state or any of its departments or officers notwithstanding another law that confers jurisdiction of the case in the circuit court. [MCL 600.6419(1)(a).]

Thus, "MCL 600.6419 generally vests the Court of Claims with exclusive jurisdiction over claims against the state or any of its departments." *Prime Time Int'l Distrib, Inc v Dep't of Treasury*, 322 Mich App 46, 55; 910 NW2d 683 (2017).

Exceptions to the statutory jurisdiction to the Court of Claims exist, however, including where an administrative agency is granted exclusive jurisdiction over the subject matter. Generally, a party aggrieved by an administrative agency may not seek relief in the courts until the party has exhausted all available administrative remedies. See, e.g., *W A Foote Mem Hosp v Dep't of Pub Health*, 210 Mich App 516, 522-523; 534 NW2d 206 (1995). "This Court has not required the phrase 'exclusive jurisdiction' to appear in a statutory provision in order to find that jurisdiction has been vested exclusively in an administrative agency." *Papas v Michigan Gaming Control Bd*, 257 Mich App 647, 657; 669 NW2d 326 (2003) (citation omitted). "As long as the statutory language chosen by the Legislature establishes the intent to endow the state agency with exclusive jurisdiction, courts must decline to exercise jurisdiction until all administrative proceedings are complete." *Id.* (citation omitted).

In this case, the Court of Claims correctly held that the state treasurer, who is the "administrator" as that term is used in the UUPA, see MCL 567.222(a), has been vested with exclusive jurisdiction over unclaimed property that has been presumed abandoned. Plaintiff focuses on only one word in the act, namely, the Legislature's use of the term "may" in MCL 567.245(1). In so doing, plaintiff ignores the context in which this term is used in MCL 567.245, and ignores the remaining provisions in the UUPA. Consistent with the directive in Const 1963, art 10, § 4 which provides that "[p]rocedures relating to escheats and to the custody and disposition of escheated property shall be prescribed by law," the UUPA prescribes a comprehensive set of procedures for abandoned property to be transferred to the state treasurer, and for claimants to assert an interest in any property paid or delivered to the state treasurer under the act. Notably, plaintiff is not challenging the portion of the UUPA involving either the payment of funds to the state or the procedure by which the state treasurer accepts property for it to sell and deposit the proceeds into the general fund. Likewise, plaintiff does not challenge the language in MCL 567.245(3) that provides for the payment of interest on property that was interest-bearing at the time it was sent to the state treasurer. It is somewhat incongruous for plaintiff to seek to enforce the procedure in one portion of MCL 567.245 while maintaining that she need not file a claim to be entitled to such interest. Further, under MCL 567.245(3), only "[i]f a claim is allowed" shall the treasurer "pay over or deliver to the claimant the property or the amount the administrator actually received or the net proceeds [and additional amounts under MCL 567.242] if it has been sold by the administrator."

Further, the preamble to the UUPA provides:

> AN ACT concerning unclaimed property; to provide for the reporting and disposition of unclaimed property; to make uniform the law concerning unclaimed property; to prescribe the powers and duties of certain state agencies and officials; to prescribe penalties and provide remedies; and to repeal acts and parts of acts. [29 PA 1995.]

"Although a preamble is not to be considered authority for construing an act, *it is useful for interpreting its purpose and scope.*" *Malcolm v City of East Detroit*, 437 Mich 132, 143; 468 NW2d 479 (1991) (emphasis added); see also *King v Ford Motor Credit Co*, 257 Mich App 303, 312; 668 NW2d 357 (2003) ("The preamble may be employed to extend the meaning of an ambiguous statute beyond the limited language of the purview. This rule must be qualified by the explanation that the result must be consistent with other rules of interpretation.") (citation omitted).

Thus, to the extent that the Legislature's use of the term "may" in MCL 567.245(1) could be said to render the statute ambiguous, the preamble supports the Court of Claims' determination that the UUPA prescribes the exclusive method for a claimant to recover unclaimed property, at least absent the exception discussed below.

Further, the Legislature's use of the term "may" in MCL 567.245(1) is not ambiguous, nor are we persuaded that the Legislature intended to make the UUPA claim procedure discretionary giving claimants the right to decline following the claim procedure and bring an action against the state in the Court of Claims. MCL 567.245(1) plainly indicates that persons whose property has been abandoned and delivered to the state may file a claim if they would like its return. The statute leaves the decision whether to act to the person who presumably abandoned it in the first place. Such interpretation supports the apparent legislative intent that the UUPA be the exclusive means by which a claimant can recover abandoned property. Thus, the choice to file a claim is discretionary but the means for securing recovery of abandoned property is not. Notably, the Legislature did not specify that a claimant could opt out of the UUPA's claim procedure nor did it grant persons a private right of action against the state that could be filed in the Court of Claims. Instead, the Legislature specified in MCL 567.247 that, after filing a claim and being dissatisfied with the administrator's decision or failure to act, an aggrieved claimant has a right to bring an action in circuit court. Moreover, not only did the Legislature prescribe an administrative procedure, but under MCL 567.260, it authorized the state treasurer to promulgate rules to carry out the provisions of the UUPA under the Administrative Procedures Act, MCL 24.201 *et seq*. MCL 567.261 further supports the conclusion that the Legislature intended that the UUPA be the exclusive means by which a claimant can recover abandoned property. MCL 567.261 provides that "[t]his act shall be applied and construed *as to effectuate its general purpose to make uniform the law with respect to the subject of this act* among states enacting it." (Emphasis added.) Uniformity in the law would not occur if persons could opt out of the UUPA claim procedure and assert common law claims of their choice against the state in the Court of Claims.

To prevent conflict with other statutory schemes, the Legislature enacted MCL 567.262 which provides: "This act shall not apply to unclaimed, lost, or abandoned property, if the loss, abandonment, or failure to claim the property is the subject of another statute of this state that specifies to whom ownership of the property shall devolve." Thus, where another *statute* addresses the loss, abandonment, or failure to claim property, and specifies to whom ownership of the property shall devolve, the UUPA procedure does not apply.

In this case, plaintiff did not allege below and she does not argue on appeal that her claim for recovery of property "is the subject of another statute . . . that specifies to whom ownership of the property shall devolve." To the contrary, plaintiff's position is that she is entitled to interest on all property covered under the UUPA, not only those types of property for which the UUPA authorizes the payment of interest. She does not assert that she is entitled to such interest under any other *statutory* authority. Accordingly, MCL 567.262 does not support plaintiff's argument that she was not required to bring her claims under the UUPA. The UUPA does not otherwise state or suggest that a person asserting an interest in unclaimed property paid or delivered to the state treasurer may select some other method for making a claim for such property.

For these reasons, the Court of Claims did not err when it determined that plaintiff was required to first pursue her administrative remedies under the UUPA before resorting to the courts.

In the UUPA, the Legislature provided the state treasurer with "exclusive jurisdiction" over the payment of funds or property held by the state after it has been abandoned, despite the absence of this specific phrase. Further, the Court of Claims did not err by holding that a person aggrieved by a decision of the state treasurer must seek review of such decision in an action in the circuit court. The Court of Claims Act does not vest the Court of Claims with jurisdiction over an appeal from an administrative agency if the circuit court has exclusive jurisdiction over such appeals. MCL 600.6419(5) states that the Court of Claims Act "does not deprive the circuit court of exclusive jurisdiction over appeals from the district court and administrative agencies as authorized by law." By its plain terms, MCL 600.6419(5) applies when (1) the case is an appeal from an administrative agency or district court, and (2) the circuit court has "exclusive jurisdiction as authorized by law." Under MCL 567.247, a person aggrieved by the state treasurer's decision must challenge that decision in an action filed in the circuit court. The Court of Claims, therefore, correctly held that it lacked jurisdiction over the claims asserted by plaintiff.

We find no merit to plaintiff's argument that the enactment of legislation to permit a claim for "claim and delivery" supports her contention that she may bring such a claim in the Court of Claims. MCL 600.2920(1) provides, in pertinent part, that, with some exceptions, "[a] civil action may be brought to recover possession of any *goods or chattels* which have been *unlawfully taken or unlawfully detained* and to recover damages sustained by the unlawful taking or unlawful detention." (Emphasis added.) Thus, an action for claim and delivery seeks the return of property wrongfully taken and held, and allows damages for the period of wrongful detention. See also MCR 3.105(A).[3] Abandoned property held by the state treasurer pursuant to its statutory authority under the UUPA cannot be considered and is not property unlawfully taken or unlawfully detained. Such property is held in trust until such time as the owner files a claim and the state treasurer determines the claim's validity.

Further, an action for claim and delivery applies only to tangible "goods or chattels," MCL 600.2920(1), not intangible property, see *Sparling Plastic Indus, Inc v Sparling*, 229 Mich App 704, 714; 583 NW2d 232 (1998). In this case, the "property" that plaintiff asserts an interest in is money, or money proceeds from previously sold property where the proceeds have been deposited in the general fund subject to future disbursement. Money is fungible. See *Lewis Estate v Rosebrook*, 329 Mich App 85, 104; 941 NW2d 74 (2019) (stating that "the funds that make up the corpus [in a joint financial account] are, as all legal tender is, wholly fungible, thereby defeating any action to return the precise property taken"). Accordingly, plaintiff cannot maintain an action for claim and delivery respecting funds deposited in the state's general fund pursuant to the UUPA.

---

[3] MCR 3.105(A) provides, in pertinent part:

> **(A) Nature of Action; Replevin.** Claim and delivery is a civil action to recover
>
> (1) possession of *goods or chattels which have been unlawfully taken or unlawfully detained*, and
>
> (2) damages sustained by the unlawful taking or unlawful detention. (Emphasis added.)

Likewise, she cannot use such an action to recover interest on such moneys, even if she is able to establish that she is entitled to such. We hold that the Court of Claims properly interpreted the UUPA and correctly held that the UUPA provides the exclusive method by which a person may recover abandoned property.

Affirmed.

/s/ James Robert Redford
/s/ Kathleen Jansen
/s/ Christopher P. Yates